IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JAY V.,[1]                                                No. 3:17-cv-00890-HZ

                Plaintiff,                       OPINION & ORDER

    v.

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,

                Defendant.


George J. Wall
1336 East Burnside Street, Suite 130
Portland, OR 97214

    Attorney for Plaintiff

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

1 - OPINION & ORDER

Billy J. Williams
Renata Gowie
U.S. Attorney's Office
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Alexis L. Toma
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Jay V. brings this action for judicial review of the Commissioner's final decision denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). Because the Commissioner's decision is free of legal error and supported by substantial evidence, it is affirmed and this case is dismissed.

## BACKGROUND

Plaintiff was born on August 17, 1960, and was fifty years old on March 31, 2011, the alleged disability onset date. Tr. 14, 21.[2] Plaintiff earned a high school diploma and has past relevant work experience as a machinist. Tr. 21. Plaintiff claims he is disabled based on alleged chronic headaches, left shoulder degenerative joint disease, and degenerative disc disease of the cervical spine. Plaintiff's benefits application was denied initially on December 4, 2013, and on reconsideration on April 9, 2014. Tr. 14. A hearing was held before Administrative Law Judge ("ALJ") Steve Lynch on October 27, 2015. Tr. 28–56. ALJ Lynch issued a written decision on November 23, 2015, finding Plaintiff not disabled. Tr. 11–27. The Appeals Council declined

---

[2] Citations to "Tr." refer to the administrative trial record filed here as ECF No. 13.

review, rendering ALJ Lynch's decision the Commissioner's final decision that Plaintiff now challenges in this Court. Tr. 1–5.

SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

At the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the

claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets its burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from March 31, 2011, through December 31, 2014. Tr. 16.

At step two, the ALJ found the Plaintiff had the following severe impairments: "left shoulder degenerative joint disease, degenerative disc disease of the cervical spine, and chronic headache." Tr. 16.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 17.

Before proceeding to step four, the ALJ determined that Plaintiff had the RFC to perform light work with the following limitations: "[Plaintiff] can occasionally climb, balance, stoop, kneel, crouch, and crawl. The claimant is limited to occasional overhead reaching with the non-dominant left upper extremity." Tr. 18.

At step four, the ALJ determined that Plaintiff could not perform any past relevant work. Tr. 21.

At step five, the ALJ determined that, when considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. 21. Specifically, Plaintiff would be able to perform the

requirements of the following representative occupations: small products assembler and mail clerk. Tr. 22.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Courts consider the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

## DISCUSSION

Plaintiff argues that the ALJ committed three harmful errors warranting reversal. First, the ALJ found that Plaintiff's chronic headaches to be a severe impairment, but failed to assess any corresponding functional limitations. Second, the ALJ improperly rejected Plaintiff's subjective symptom testimony. Third, the ALJ failed to fulfill his duty to develop the medical record regarding Plaintiff's headaches and arthritis of the cervical spine. The Court will discuss each alleged error in turn.

//

//

## I. Chronic Headaches

Plaintiff has been diagnosed with chronic sinusitis which he claims is the source of his headaches. Plaintiff also testified that he suffered three concussions which likely contributed to his headaches as well. Tr. 42. At the administrative hearing, Plaintiff explained that his headaches caused unsatisfactory job performance and that he could have continued working as a machinist if the headaches were not bothering him. Tr. 43, 47. Plaintiff took six to seven days of vacation leave from his last job to undergo medical tests related to a sinus infection. Tr. 49. Plaintiff testified that he likely lost his job due to absenteeism caused by his chronic headaches. Tr. 49. Based on Plaintiff's testimony, the ALJ posed a hypothetical to the vocational expert ("VE"), asking whether a person who would be absent from work for two to three days at least every other month would be able to sustain full-time employment. Tr. 52–53. The VE responded that such a person would not be able to do so. Tr. 53. Ultimately, the ALJ found that Plaintiff's headaches were a severe impairment but he did not incorporate any absenteeism limitation into Plaintiff's RFC.

Plaintiff contends that if his RFC accounted for his claimed absenteeism, then he would have been found disabled. The RFC is the most a person can do despite their limitations. 20 C.F.R. § 404.1545(a)(1). ALJs have a duty to base a plaintiff's RFC on the entire record, including the plaintiff's testimony. 20 C.F.R. § 404.1545(a)(3). An ALJ must consider all of the plaintiff's impairments, severe and non-severe. 20 C.F.R. § 404.1545(a)(2). Only limitations supported by substantial evidence must be incorporated into the RFC. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163–65 (9th Cir. 2001). "An ALJ is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." *Id.* at 1164–65. Courts will affirm RFC determinations where the ALJ applied the proper legal standard and the decision was

supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). An ALJ may base its RFC determinations on limitations for which there is record support and need not depend on the plaintiff's subjective complaints. *Id.*

In this case, the ALJ's RFC determination was supported by substantial evidence. Plaintiff misunderstands the ALJ's decision. Plaintiff claimed that his headaches were due, in part, to three concussions that he previously suffered. However, there was no medical evidence in the record showing that Plaintiff's concussions had any limiting effect. Tr. 17. The ALJ then explained that Plaintiff's sinusitis—the root cause of his headaches—was intermittent in nature and controlled through only conservative treatment. Tr. 20. For example, in response to Plaintiff's complaints of headaches, physicians prescribed over-the-counter pain medication, rest, and ice. Tr. 231, 238, 454–55. Further, there is no indication in the medical record that Plaintiff's headaches limited his ability to work. The ALJ was not required to incorporate Plaintiff's purported absenteeism limitation into the RFC merely because Plaintiff testified that his headaches caused him to miss work. The ALJ's decision was in accordance with the treating physician's treatment notes as well as the opinions of state agency non-examining physicians. Tr. 74, 230–31, 238, 285, 454, 457. Moreover, as discussed in greater detail below, the ALJ provided clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony.

## II.     Subjective Symptom Testimony

Next, Plaintiff argues that the ALJ provided insufficient reasons to discount his testimony. The ALJ is responsible for determining credibility. *Vasquez*, 572 F.3d at 591. Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160

(9th Cir. 2008) (quotation and citation omitted) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and convincing reasons"); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted) (the ALJ engages in two-step analysis to determine credibility: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give "specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms"). An adverse credibility determination must include specific findings supported by substantial evidence and a clear and convincing explanation.

When determining the credibility of a plaintiff's complaints of pain or other limitations, the ALJ may properly consider several factors, including the plaintiff's "daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may also consider the ability to perform household chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment for excessive pain. *Id.*

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (internal quotation marks omitted).

As discussed above, Plaintiff claims that his chronic sinusitis and resulting headaches impeded his work performance and caused him to miss work. Plaintiff also testified that he has limitations stemming from his arthritis in the upper back and neck. Additionally, Plaintiff claims that his knees go out if he stands still for too long without walking around a little bit and that his walking ability is diminished. Tr. 47.

The ALJ found that Plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms was not entirely credible. Tr. 18. The ALJ provided three reasons for discounting Plaintiff's testimony, including: (1) he sought work as a machinist during the alleged disability period; (2) his activities of daily living belied his claim of total disability; and (3) objective medical evidence and a conservative course of treatment did not corroborate the alleged symptoms. Tr. 19–21.

First, the ALJ explained that Plaintiff's efforts to find a machinist job showed that "he has a belief that he can perform a physically demanding job." Tr. 18. The ALJ also found that this was consistent with Plaintiff's daily activities. Tr. 18. An ALJ may find a plaintiff's claim of total disability incredible where the plaintiff considers himself capable of working and holds himself out as such. *See Bray*, 554 F.3d at 1227; *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996); *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988). Here, Plaintiff was laid off from his last job as a machinist in 2009. Tr. 33–34. He testified that afterward he looked for any kind of job, especially work as a machinist, but was unable to secure employment. Tr. 34. It was, therefore, proper for the ALJ to conclude that Plaintiff's testimony that he searched for a machinist job after the disability onset date contradicted his claim that he was incapable of work.

Second, the ALJ found that Plaintiff's activities of daily living belied his subjective symptom testimony. As outlined above, an ALJ may reject a plaintiff's symptom testimony

where it is inconsistent with the plaintiff's daily activities. Plaintiff testified that his abilities to stand, walk, and lift were impaired. Tr. 47, 151, 155. Plaintiff also testified, however, that during the relevant period he chopped wood, mowed his lawn, walked his 1.76 acres property on a daily basis, drove a car, went shopping, went to garage sales, fished, hunted, and operated a boat. Tr. 38–39, 48, 153–54, 184–86. Plaintiff's testimony that he recently ceased some of those activities due to financial infeasibility or physical incapability does not negate the fact that he engaged in those daily activities after the alleged disability onset date. The Court is therefore persuaded that the ALJ met its burden of identifying Plaintiff's particular symptom testimony and explaining why that testimony was contradicted by his daily activities.

Third, the ALJ concluded that objective medical evidence and Plaintiff's conservative course of treatment did not corroborate Plaintiff's symptom testimony. Particularly, the ALJ found that Plaintiff's claimed "difficulty with prolonged standing, and frequent sinusitis flare ups were not corroborated by a competent medical source." Tr. 19. Discrepancies between the plaintiff's testimony and the objective medical evidence is a valid reason for an ALJ to reject the plaintiff's symptom testimony. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). Similarly, an ALJ may rely on evidence that the plaintiff's symptoms were managed with a conservative course of treatment to discount the plaintiff's testimony. *Tommasetti*, 553 F.3d at 1030. Examinations of Plaintiff's spine and left shoulder showed only intermittent findings of mild pain, stiffness, and reduced range of motion. Tr. 224, 226, 455–56. "A treating physician's most recent medical reports are highly probative." *Osenbrock*, 240 F.3d at 1165. Dr. Holmes's February 10, 2015 examination of Plaintiff showed that he had normal gait and full strength throughout both his upper and lower extremities. Tr. 455. Plaintiff had only tenderness with palpation or movement in the spine and some decreased range of motion. Tr. 455. The

ALJ's RFC incorporated postural and reaching limitations consistent with these objective medical findings. Tr. 18. Further, as the Commissioner points out, there were no indications that Plaintiff had any difficulty with standing or walking.

Likewise, Plaintiff's testimony that he suffered from frequent sinusitis flare ups that caused him to miss work was inconsistent with objective medical evidence and Plaintiff's conservative course of treatment. As discussed above, the medical record shows that Plaintiff's sinusitis and resulting headaches were intermittent and controlled with conservative treatment such as ibuprofen and antibiotics. *See Supra* Part. I; Tr. 20, 224, 231, 238, 241, 244, 455. Accordingly, the Court finds that the ALJ's decision to discount Plaintiff's testimony regarding his sinusitis symptoms was supported by substantial evidence in the record.

### III. The ALJ's Duty to Develop the Medical Record

Lastly, Plaintiff argues that the ALJ failed to carry its duty to properly develop the record regarding Plaintiff's headaches and arthritis of the cervical spine. It is the ALJ's special duty to fully and fairly develop the medical record. *Smolen v. Chater*, 80 F.3d 1273, 1283 (9th Cir. 1996). Specifically, the Commissioner must develop and complete the plaintiff's medical history for at least twelve months prior to the date in which the application was filed. 20 C.F.R. § 404.1512(b)(1). An ALJ must make "every reasonable effort" to request evidence from a plaintiff's medical source. 20 C.F.R. § 404.1512(b)(1)(i). An ALJ may order a consultative medical examination if it is difficult to obtain evidence from the plaintiff's medical source. 20 C.F.R. § 404.1512(b)(2). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting

questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

Plaintiff has not demonstrated that the ALJ's duty to develop the record has been triggered. As a threshold matter, Plaintiff has not explained why the record is undeveloped as to his headaches or arthritis of the cervical spine. Rather, Plaintiff conflates his duty to develop the record argument with his claim that the ALJ improperly rejected his subjective symptom testimony. *See* Pl.'s Br. 7–8, ECF 17. Plaintiff argues in a general fashion that no physician examined him and that "the only opinions were conclusory opinions from non-examining sources, who were handicapped by not having a complete medical record to review." Pl.'s Br. 9. Simply put, Plaintiff has not demonstrated that the record is ambiguous or incomplete as to either impairment.

The ALJ wrote:

> The undersigned notes that no treating physician has indicated or imposed upon the claimant work restriction relation to his inability to stand, lift, sit or engage in postural activities. One factor for the ALJ to consider is that none of the claimant's treating doctors have offered an opinion that the claimant was disabled or made any statement or recommendation that the claimant was unable to work at an SGA level. Thus, the absence of any treating source statement or opinion that supports the claimant's allegations in the record suggests that the claimant's impairments are nondisabling.

Tr. 21.

Plaintiff asserts that the lack of an opinion from a treating or examining source triggers the ALJ's duty to develop the record. At the administrative hearing, however, Plaintiff's counsel represented to the ALJ that the medical record was complete. Tr. 31–32. The following exchange between the ALJ and Plaintiff's counsel occurred at the outset of the hearing:

12 - OPINION & ORDER

> ALJ: Are you aware of any outstanding medical records that need to be brought in, Mr. Unkeles?
>
> ATTY: Claimant has seen his primary care provider recently and those aren't in the records, but I don't' know that they will - -
>
> ALJ: Will change - -
>
> ATTY: - - say anything, you know, things are continuing as they have with the - -
>
> ALJ: Right.
>
> ATTY: -- same problems.

Tr. 31–32. The burden to prove disability lies with Plaintiff. That burden cannot be shifted to the ALJ by claiming on appeal that the medical record is undeveloped where Plaintiff's counsel represented that the treating provider's medical record was complete. The Commissioner is only required to make every reasonable effort to obtain records from Plaintiff's medical sources during the relevant period. 20 C.F.R. § 404.1512(b). The ALJ does not have a further duty to solicit a medical opinion from the treating provider where the record is neither undeveloped nor ambiguous. 20 C.F.R. §§ 404.1512(b), 416.912(b); *Bayliss*, 427 F.3d at 1217; *Thomas v. Barhnart,* 278 F.3d 947, 958 (9th Cir. 2002). A consultative examination is only required where there is difficulty in acquiring medical evidence from the treating providers. 20 C.F.R. § 404.1512(b)(2). Plaintiff has not shown that any such difficulty existed here.

The ALJ's disability determination was based on the medical record as a whole, including the treatment notes from Plaintiff's treating provider and the opinions of state agency non-examining physicians. Because the ALJ's decision was supported by the record, the ALJ did not have a duty to re-contact Plaintiff's medical providers. *Bayliss*, 427 F.3d at 1217. None of the evidence suggests that additional records would have changed the administrative decision and the non-examining physicians who did offer opinions on Plaintiff's functional capacity found

that he retained the ability to work. *See e.g. Gutierrez v. Astrue*, No. ED CV 11-1650-E, 2012 WL 1903433, at *2,7 (C.D. Cal. May 25, 2012) (holding that the ALJ's duty to develop was not triggered where the treating physician offered no opinion regarding the plaintiff's functional capacity and the opinions of non-examining physicians supported the ALJ's disability determination). Accordingly, the Court concludes that the ALJ's duty to further develop the record was not triggered.

## CONCLUSION

The Commissioner's decision is affirmed and this case is dismissed.

IT IS SO ORDERED.

Dated this 6 day of July, 2018.

*[signature]*
MARCO A. HERNÁNDEZ
United States District Judge